Charles Layton COX,
Petitioner-Appellant,

v.

Charles L. BENSON and Maurice Seigler,
Respondents-Appellees.

No. 76–1685.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1976.

Decided Jan. 12, 1977.

As Amended on Denial of Rehearing
March 18, 1977.

George J. Heid, Lafayette, Ind., for petitioner-appellant.

James B. Young, U. S. Atty., Kennard P. Foster, Asst. U. S. Atty., Indianapolis, Ind., for respondents-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal from the denial of a habeas petition filed by a prisoner concerns certain procedural aspects of the federal prison parole system. Two issues are presented for review: (1) whether the National Appellate Board arbitrarily rescinded the Parole Board's release date in disregard of its own regulations; and (2) whether the Parole Board regulations as applied to the petitioner violated his constitutional guarantees to due process of law.

Petitioner Charles Layton Cox was convicted of armed robbery under 18 U.S.C. § 2113(d) in 1968. After serving seven years of a twenty-four year sentence at the United States Penitentiary at Terre Haute, Indiana, he was given a parole hearing in October 1975, and thereafter notified that he had been granted a tentative decision of parole effective February 11, 1976.[1]

In the recommendation for release, Cox was given a positive report. He was described as having been receptive to programming and having matured significantly. It was the opinion of this case manager that his behavior and attitude suggested an ability to make a normal community adjustment.[2]

The National Appellate Board, on its own motion, reviewed the examiners' decision and denied parole without further parole

1. The Board of Parole Hearing Summary reads in part:
INSTITUTIONAL CONDUCT/PROGRAM ACHIEVEMENT/RELEASE PLAN:
Attention is invited to Progress Report dated 09/16/75. The subject has been very receptive to programming. He is involved in several club activities at the institution. He is also involved in recreation activity. He requests the privilege of being released by way of a Community Treatment Center where employment may be arranged. He stated that he has been incarcerated so long that he has made no plans as far as his residence is concerned, however, he does not anticipate having any problem in arranging a satisfactory residence for his release.

2. The case manager wrote:
This 42 year old offender has served approximately seven years towards his 24 year sentence. During his period of confinement, he has maintained a clear conduct record and has been very receptive to programming. There is evidence that he has matured significantly and has developed a deeper self-understanding. The insight he has gained has provided him with a sense of remorse and desire to conduct himself as a responsible individual. It is felt that this period of confinement has been profitable, educational and a period of awakening for Mr. Cox. We are of the opinion that his positive behavior and attitude for the past seven years suggests that he has the ability to make a normal community adjustment and abstain from further anti-social acts. Therefore, it is recommended that he be granted parole through a Community Treatment Center for the purpose of housing and employment assistance.

consideration for three years.[3] When petitioner appealed this decision to the National Board, the denial was affirmed. Cox then filed a pro se petition for a writ of habeas corpus in the Southern District of Indiana. The district court denied his petition to proceed in forma pauperis and dismissed the habeas petition as frivolous.

On appeal petitioner argues that the National Appellate Board proceeded arbitrarily, in violation of its own regulations and in the application of the new parole guidelines to his case, and that this denied him due process of the law in violation of the Fifth Amendment. He also urges that due process required the opportunity for a hearing before the National Board could change the decision to deny him parole.

## I

■ The extent of petitioner's claim that due process requires a hearing before the National Appellate Board was delineated by this circuit in *McGee v. Aaron*, 523 F.2d 825 (7th Cir. 1975). We held there that due process did not require a rehearing if a prisoner is given written reasons for a denial following the initial hearing. However, we went on to state: "At that point, the prisoner can petition for a writ of habeas corpus if he thinks the reasons given are false, insufficient, or capricious, as he can if no reasons are given." 523 F.2d at 827. Here the petitioner alleges that the reasons given were arbitrary and capricious. Under these circumstances we cannot say that the claim is frivolous.

The reasons for denial given by the National Board cited the new United States Board of Parole Guidelines, 28 C.F.R. § 2.20. Under these guidelines, petitioner's crime was classified as of "greatest severity" and he was given a "salient factor score" (parole prognosis) of three, which combination places him in the highest category of punishment. The reason given in the Notice of Action for such classification was that "shots were fired and there was assaultive behavior" at the time of his offense. He was given no reason why his salient factor score was placed at "three."

■ Petitioner disputes the fact that shots were fired during the commission of the crime. He claims that the shots fired were only between police and his accomplice in the robbery at a time when the accomplice was fleeing separately. Because an evidentiary hearing has not yet been held in this case, no such information is available in the record. Petitioner should at least be permitted to prove these facts as they appear to have been highly significant to the National Board's decision.

■ Moreover, there appears to be a possibility that the guidelines were arbitrarily applied to petitioner, in which case his right to due process would have been violated. Even if the National Appellate Board placed petitioner in the correct classification with the correct salient factor score according to the guidelines, that classification calls for a period of incarceration of greater than 55–65 months. Petitioner has already served 96 months. Further, the Board's decision stated that petitioner's case was given a continuance of thirty-six months before another parole hearing because "board policy prohibits a continuance

---

3. The National Appellate Board decision reads:
   Continue for Institutional Review Hearing in October 1978.
   Conditions or remarks: Reasons: your offense behavior has been rated as greatest severity because shots were fired and there was assaultive behavior. You have a salient factor score of 3. You have been in custody a total of 96 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of more than sixty-five months to be served before release for cases with good institutional program performance and adjustment. After re-

view of all relevant factors and information presented, it is found that a decision at this consideration outside the guidelines does not appear warranted. Board guidelines for greatest severity cases do not specify a maximum limit. Therefore, the decision in your case has been based in part upon a comparison of the relative severity of your offense behavior with offense behavior examples listed in the very high severity category. Board policy prohibits a continuance of more than thirty-six months without review. Your continuance has been limited by this policy.

of more than thirty-six months without review." The clear implication is that the Board very well may have put the hearing off for a longer period if this had not been prevented by Board policy. This statement, coupled with the fact that petitioner has served over half again as much time as the minimum required by the guidelines and the affirmative report on the petitioner's rehabilitative progress, indicate the possibility of arbitrary action on the part of the National Appellate Board.

■ The appearance of arbitrariness is enhanced by the fact that the National Board did not follow normal procedures set out in the governing administrative regulations in this case. The regulations state that the decision of the initial hearing examiner panel shall be final with one exception. 28 C.F.R. § 2.13(a).[4] This finality is subject to two conditions. The first is not applicable to this case.[5] The second[6] provides for review of a case by the regional administrative hearing examiner where an original panel proposes a decision falling outside the explicit guidelines. Because petitioner has served 96 months and the guidelines only require more than 55–65 months, the decision to grant parole in this case cannot be said to fall outside the guidelines.

[6] The one exception to section 2.13(a) is found in section 2.24.[7] The Government

has argued in its brief that the action of the National Board was taken pursuant to this section. It permits a regional director to review a decision and refer it to a vote by the national directors for reconsideration. The regulations, however, explicitly state that this must be done "prior to written notification to the prisoner." In the instant case, the National Board took action only after petitioner was notified of a tentative parole date. Because the action of the Board appears to contravene its own regulations, the petitioner has made a strong showing that such action was arbitrary and capricious.

For these reasons we disagree with the characterization of this petition as frivolous. It appears to be of merit and should not have been dismissed summarily. The order of dismissal is reversed and the cause is remanded for further proceedings consistent with this opinion.

As a preliminary matter respondents should be required on remand to produce the record on which the Board relied. It may be that the record will demonstrate in what area, if any, there is need for an evidentiary hearing.

FAIRCHILD, Chief Judge, concurring.

I concur in this court's decision to reverse the district court's dismissal of appellant Cox's habeas petition and to remand for further proceedings because I think there

---

4. Section 2.13 reads:
   Initial hearing.
   (a) An initial hearing shall be conducted by a panel of two hearing examiners designated by the Board. The examiner panel shall inform the prisoner of the decision and, if parole is denied, of the reasons therefor. The decision of the examiner panel, subject to provisions of § 2.23(b) and (c) shall be final *unless action is initiated by the Regional Director pursuant to § 2.24.* (Emphasis added.)

5. 28 C.F.R. § 2.23(b) requires the regional Administrative Hearing Examiner to cast a deciding vote in the case of a split decision by the hearing examining panel.

6. 28 C.F.R. § 2.23(c) states:
   When a hearing examiner panel proposes to make a decision *which falls outside of explicit guidelines for parole decision-making promulgated by the Board,* the case shall be reviewed by the appropriate regional Administrative Hearing Examiner. When an Administrative Hearing Examiner does not con-

cur in a decision of an examiner panel to set a parole effective date or continuance outside the Board's guidelines he may with the concurrence of the Regional Director modify the date to the nearest limit of the guidelines. (Emphasis added.)

7. Section 2.24 reads:
   *Review of panel decision by the Regional Director and the National Directors.*
   A Regional Director may review the decision of any examiner panel and refer this decision, prior to written notification to the prisoner, with his recommendation and vote to the National Directors for reconsideration and any action deemed appropriate. Written notice of this reconsideration action shall be mailed or transmitted to the prisoner within fifteen working days of the date of the hearing. The Regional Director and each National Director shall have one vote and decisions shall be based upon the concurrence of two votes.

are some questions as to the exact circumstances of the shots fired in the commission of the armed robbery of which appellant was convicted. Given that the shooting element of the offense raises the crime's severity classification from "very high" to "greatest," and given that this changes appellant's probable range of customary total time served (taking into account his salient factor score) from 55–65 months to a "greater," but not specified, range, I do not believe it possible to decide whether or not appellant has a sound claim for relief until more is known about the shooting than the National Appellate Board's conclusionary statement that "shots were fired and there was assaultive behavior."

I would note, however, that if the characterization is correct, I do not see any need to reverse and remand in the mere fact that appellant has already served 96 months of a twenty-four year sentence. Appellant's salient factor score of 3[1] places him in the group of offenders with the poorest parole prognosis. Were the severity of his offense characterized as "very high," Justice Department guidelines would expect him to serve 55 to 65 months before any parole would be considered. But I do not think this 55–65 month range for crimes with "very high" severity should by any means be read as some kind of maximum also applicable in the "greatest" severity category where the Justice Department has not even established a range.[2] I believe that in

1. The lower an offender's salient factor score, the poorer his parole prognosis. In arriving at a score, the parole board awards 2 points if an offender has had no prior convictions, 1 point if he has had one or two convictions, 2 points if an offender has had no prior incarcerations, 1 point if he has had one or two incarcerations, 1 point if an offender was age 18 or older at his first commitment, 1 point if the offense did not involve auto theft, 1 point if the offender has never had parole revoked or committed a new offense on parole, 1 point if the offender has no history of heroin or opium dependence, 1 point if the offender has completed high school or received a grade equivalency diploma, 1 point if the offender was employed or attending school full time in the community for 6 months during the last two years, 1 point if the offender's release plan is to live with a spouse and/or children. Offenders whose total point score is 3 or less are deemed to have the poorest parole prognosis. See 28 C.F.R. § 2.20.

2. 28 C.F.R. § 2.20 provides the following parole guidelines for adult offenders:

ADULT

[Guidelines for decisionmaking, customary total time served before release (including jail time)]

| Offense characteristics: severity of offense behavior (examples) | Offender characteristics: parole prognosis (salient factor score) | | | |
|---|---|---|---|---|
| | Very good (11 to 9) | Good (8 to 6) | Fair (5 to 4) | Poor (3 to 0) |
| **LOW** Immigration law violations — Minor theft (includes larceny and simple possession of stolen property less than $1,000). Walkaway — | 6 to 10 mo | 8 to 12 mo | 10 to 14 mo | 12 to 16 mo. |
| **LOW MODERATE** Alcohol law violations — Counterfeit currency (passing/possession less than $1,000). Drugs, marihuana, simple possession (less than $500). Forgery/fraud (less than $1,000) — Income tax evasion (less than $10,000) — Selective Service Act violations — Theft from mail (less than $1,000) — | 8 to 12 mo | 12 to 16 mo | 16 to 20 mo | 20 to 25 mo. |
| **MODERATE** Bribery of public officials — Counterfeit currency (passing/possession $1,000 to $19,999). Drugs: Marihuana, possession with intent to distribute/sale (less than $5,000). "Soft drugs", possession with intent to distribute/sale (less than to $5,000) — Embezzlement (less than $20,000) — | 12 to 16 mo | 16 to 20 mo | 20 to 24 mo | 24 to 30 mo |

## ADULT

[Guidelines for decisionmaking, customary total time served before release (including jail time)]

| Offense characteristics: security of offense behavior (examples) | Offender characteristics: parole prognosis (salient factor score) | | | |
|---|---|---|---|---|
| | Very good (11 to 9) | Good (8 to 6) | Fair (5 to 4) | Poor (3 to 0) |
| **MODERATE—Continued** | | | | |
| Explosives, possession/transportation _____<br>Firearms Act, possession/purchase/sale (single weapon-not sawed-off shotgun or machinegun).<br>Income tax evasion ($10,000 to $50,000) _____<br>Interstate transportation of stolen/forged securities (less than $20,000).<br>Mailing threatening communications _____<br>Misprision of felony _____<br>Receiving stolen property with intent to resell (less than $20,000).<br>Smuggling/transporting of aliens _____<br>Theft/forgery/fraud ($1,000 to $19,999) _____<br>Theft of motor vehicle (not multiple theft or for resale). | 12 to 16 mo_____ | 16 to 20 mo_____ | 20 to 24 mo____ | 24 to 30 mo. (Cont'd) |
| **HIGH** | | | | |
| Burglary or larceny (other than embezzlement) from bank or post office.<br>Counterfeit currency (passing/possession $20,000–$100,000).<br>Counterfeiting (manufacturing) _____<br>Drugs:<br>  Marihuana, possession with intent to distribute/sale ($5,000 or more).<br>  "Soft drugs", possession with intent to distribute/sale ($500 to $5,000).<br>Embezzlement ($20,000 to $100,000) _____<br>Firearms Act, possession/purchase/sale (sawed-off shotgun(s), machine gun(s), or multiple weapons).<br>Interstate transportation of stolen/forged securities ($20,000 to $100,000).<br>Mann Act (no force—commercial purposes) _____<br>Vehicle theft (for resale) _____<br>Receiving stolen property ($20,000 to $100,000) ___<br>Theft/forgery/fraud ($20,000 to $100,000) _____ | 16 to 20 mo_____ | 20 to 26 mo_____ | 26 to 32 mo____ | 32 to 38 mo. |
| **VERY HIGH** | | | | |
| Robbery (weapon or threat) _____<br>Drugs:<br>  "Hard drugs" (possession with intent to distribute/sale) [no prior conviction for sale of "hard drugs"].<br>  "Soft drugs", possession with intent to distribute/sale (over $5,000).<br>Extortion_____<br>Mann Act (force) _____<br>Sexual act (force) _____ | 26 to 36 mo_____ | 36 to 45 mo_____ | 45 to 55 mo____ | 55 to 65 mo. |
| **GREATEST** | | | | |
| Aggravated felony (e.g., robbery, sexual act, aggravated assault)—weapon fired or personal injury.<br>Aircraft hijacking _____<br>Drugs: "Hard drugs" (possession with intent to distribute/sale) for profit (prior conviction(s) for sale of "hard drugs").<br>Espionage _____<br>Explosives (detonation) _____<br>Kidnapping _____<br>Willful homicide _____ | (Greater than above—however, specific ranges are not given due to the limited number of cases and the extreme variations in severity possible within the category.) | | | |

### NOTES

1. These guidelines are predicated upon good institutional conduct and program performance.

2. If an offense behavior is not listed above, the proper category may be obtained by comparing the severity of the offense behavior with those of similar offense behaviors listed.

the case of greatest severity crimes committed by offenders with low salient factor scores, the Parole Board has the discretion to deny parole even after 65 months based on the egregious nature of the offense, and that this reason satisfies the requirement of *King v. United States*, 492 F.2d 1337 (7th Cir. 1974); *McGee v. Aaron*, 523 F.2d 825 (7th Cir. 1975).

I would further note that even if appellant's account of the shooting is correct, i. e., that the shots fired were by police and an accomplice in the course of the accomplice's independent flight, I am not sure that the Parole Board is in error in characterizing appellant's crime as of greatest severity or in denying parole. For it may well be within the Board's discretion to decide that one who participates in a crime in some way involving violence, though not himself firing a weapon, is more dangerous than one whose crime involved no violence whatsoever. But this is a question we do not, and indeed should not, reach by dealing with hypotheticals. It is precisely for the purpose of determining the facts of the shooting involved, as they are known by the Parole Board, and as they are necessary to determining whether appellant's crime has been appropriately characterized, that I join in this decision to remand.

The majority places some reliance for its opinion on the fact that in this case the National Appellate Board failed to review the regional board's parole decision prior to notification to appellant of that decision as required by 28 C.F.R. § 2.24. I cannot join in this part of the opinion as I find the record insufficient even to raise a question that this omission on the part of the Board was so prejudicial to appellant as to warrant reversal of his parole denial.