Howard E. **BRADFORD** and Robert E. Harris, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Robert **WEINSTEIN** et al., Defendants.

Civ. No. 4308.

United States District Court, E. D. North Carolina, Raleigh Division.

April 30, 1973.

## ORDER

BUTLER, Chief Judge.

The plaintiffs seek leave to file in forma pauperis a civil rights action under 42 U.S.C. § 1983. Both plaintiffs are state prisoners incarcerated at the Caledonia Prison Unit at Tillery, North Carolina.

The plaintiffs challenge, as being constitutionally infirm, the disciplinary procedures employed by officials of the state prisons in adjudicating infractions of prison rules, and the procedures followed by the North Carolina Board of Paroles in deciding whether or not to grant parole. Three members of the Board of Paroles are named as defendants, as well as the Commissioner of Correction and "their agents, employees, and successors in interest".

The essence of the complaint is that the challenged procedures fail to comply with the Due Process Clause of the Constitution. In regard to the procedures of the Board of Paroles, the plaintiffs allege (1) that there are no criteria for determining whether an inmate is given a parole suitability hearing or whether he is given a substitute review of his records for determining parole suitability, (2) that inmates are not informed as to the material to which the Board of Paroles has access, and are prohibited from seeing their record folders; (3) that inmates must permit prison officials to copy legal pleadings and that such copies are entered into the inmates' folders; (4) that counsel is not provided for indigent inmates at proceeding in which the granting of parole is considered; (5) that hearings of the Board of Paroles last only five or ten minutes, and that that is an insufficient time in which to adequately determine whether or not an inmate should be paroled; (6) that the Board of Paroles members have no expertise in matters of penology, and base their decisions on false, inaccurate, and misleading information. There are further allegations that the Board of Paroles is not so composed as to reflect a cross-section of the state and that the Board members have poor thinking processes. Plaintiffs also allege that the Board of Paroles relies to a great extent on written information that is placed in inmates' folders through processes with no safeguards for reliability.

As to procedures used by disciplinary boards or committees, the plaintiffs allege that records of such proceedings are placed in inmates' folders and considered by the Board of Paroles in deciding whether to grant parole; that such procedures are biased and incomplete; and that disciplinary investigations do not develop critical facts. Plaintiffs specifically allege that an inmate is not given an opportunity to rebut or even see the evidence against him in a disciplinary proceeding.

The plaintiffs seek a declaratory judgment and injunctive relief to provide the following "rights" in all disciplinary and parole procedures: timely notice of all proceedings; an opportunity by an inmate to review his entire file; an opportunity to be heard, to present witnesses, and to cross-examine adverse witnesses; the right to be heard by an impartial panel and to challenge any panel member for cause; a verbatim transcript of any proceeding and a statement of the evidence relied upon in reaching a decision; and the right to be represented by counsel, and to have counsel appointed if the inmate is indigent. In addition to these alleged rights, the plaintiffs assert that copies of all legal pleadings should be removed from inmates' files and not disclosed to the Board of Paroles.

The plaintiff Bradford alleges that he has been considered for parole on three occasions, in December of 1970, on March 10, 1972, and on September 20, 1972, and that parole was denied on all three occasions. He alleges that he was denied parole without being present at the proceedings before the Board of Paroles, and without the benefit of a hearing or representation by counsel, and that each denial of parole was arbitrary and without "good cause."

The plaintiff Harris alleges that he was considered for parole in February of 1973 and that he was similarly denied parole arbitrarily and without "good cause." Neither of the plaintiffs states the crime of which he was convicted or the length of the term of imprisonment imposed upon his conviction.

The plaintiffs seek leave to file this action not only on behalf of themselves,

but also as a class action pursuant to Rule 23(b)(1) and (2), Federal Rules of Civil Procedure, on behalf of all other inmates in the North Carolina prison system, including the inmates at the Women's Prison in Raleigh.

Rule 23(a) provides that suits may be maintained as class actions only if the following requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiffs do not seek to file the action pursuant to Rule 23(b)(3), which would require notice to all prospective members of the class and which would allow each prospective member to request that he or she be excluded from the class.

■ Parole and discipline are matters which are considered on an individual basis. It does not appear that the claims of the two plaintiffs present "questions of law or fact" in regard to parole and prison discipline, that are common to the 10,000 inmates in the North Carolina prison system. Further, it does not appear that the claims of the plaintiffs are typical of the claims of the class they seek to represent. Given the possibility of divergent interests among the thousands of inmates, it does not appear that the plaintiffs would "fairly and adequately protect the interests of the class." Further, there is a total lack of specificity as to all other inmates. No factual situation pertaining to another inmate is presented in the complaint. In Heckart v. Pate, 52 F.R.D. 224, 227 (N.D.Ill., 1971) an Illinois prison inmate sought to file a civil rights action on behalf of all prison inmates in Illinois as a class. The court said:

> It is inconceivable that all inmates, or a sufficient number of them to constitute this cause as a class action, have the same interests and share common questions of law or facts . . . .

> An individual prisoner may have individual grievances and may raise questions of his own particular treatment as being violative of his constitutional rights but each case is personal and dependent on particular facts.

It is the opinion of this court that this action cannot be properly maintained as a class action. The court will consider the complaint as it relates to the claims of the named plaintiffs.

The complaint contains broad attacks on procedures followed by the North Carolina Board of Paroles and by prison officials in disciplinary proceedings. The functions of the Board of Paroles are entirely different than those of disciplinary boards, and therefore the allegations concerning each will be dealt with separately.

■■ It is the function of the Board of Paroles to decide whether an inmate should be conditionally released before the expiration of his prison sentence. North Carolina General Statute § 148–60 reads as follows:

> The time of releasing each prisoner eligible for consideration for parole as provided for herein shall be discretionary, and due consideration shall be given to the reasonable probability that the prisoner will live and remain in liberty without violating the law; that the release of the prisoner is not incompatible with the welfare of society, and that the record of the prisoner during his confinement established that the prisoner is obedient to prison rules and regulations, and has shown the proper respect for prison officials, and due regard and consideration for his fellow prisoners; and that the prisoner harbors no resentment

against society or the judge, prosecuting attorneys, or jury that convicted the prisoner.

The Board must weigh all possible benefits of parole as against the possible risks in releasing to society a person who has proved unwilling to obey the law and comport with acceptable social standards. It is often a difficult decision and must be based on many factors. The granting of parole is a function which necessarily is a matter that must be left to the discretion of parole officials. Menechino v. Oswald, 430 F.2d 403, 408 (2d Cir. 1970) and Dorado v. Kerr, 454 F.2d 892, 897 (9th Cir., 1972), cert. denied, 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972).

The plaintiffs challenge the processes of the Board of Paroles as failing to comply with the Due Process Clause. The court is aware of the recent decision of the United States Supreme Court in Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the court specifies the due process rights to be accorded a parolee in a parole revocation proceeding. However, this court is of the opinion that a parole revocation proceeding differs from a review by a parole board to determine whether an inmate should be paroled initially. In the former proceeding, the determination is whether the conditional freedom of the parolee should be terminated because of an alleged violation of the conditions of his parole. In a review to decide whether parole should be granted, the determination is whether an inmate is a suitable prospect for return to society.

 This court is of the opinion that the Due Process Clause does not apply in procedures designed to determine suitability for parole. See, Menechino v. Oswald, 430 F.2d 403 (2d Cir., 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971). The inmate is not constitutionally entitled to an adversary and evidentiary hearing on his suitability for parole, nor is he entitled to rebut information in possession of the Board of Paroles which militates against his parole. Lewis v. Rockefeller, 305 F. Supp. 258, 259 (S.D.N.Y.1969), affirmed 431 F.2d 368. Nor does an inmate have a constitutional right to examine his record or parole board files. Tarlton v. United States, 430 F.2d 1351, 1352 (5th Cir., 1970); Ott v. Ciccone, 326 F.Supp. 609, 612 (W.D.Mo., 1970). Nor is an inmate constitutionally entitled to representation by counsel before the Board when it reviews an inmate's case to determine his suitability for parole. Buchanan v. Clark, 446 F.2d 1379 (5th Cir., 1971), cert. denied, 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971). It was held in Schawartzberg v. United States Board of Parole, 399 F.2d 297 (10th Cir., 1968) that a prison regulation prohibiting representation by counsel at a parole review was not unconstitutional. An inmate has no constitutional right to have the Board of Paroles specify the reasons for which parole has been denied. Lewis v. Rockefeller, *supra*, and Madden v. New Jersey State Parole Board, 438 F.2d 1189 (3rd Cir., 1971).

 The plaintiffs' complaint that copies of an inmate's legal pleadings are placed in his prison file, and thus are available for review by the Board of Paroles, is without merit. Such pleadings are filed with the court and are matters of public record.

 Plaintiffs' allegations that the Board of Paroles does not spend sufficient time in considering parole eligibility and that the Board members are incompetent do not raise issues that are proper matters for review by this court.

 Nor is there merit in plaintiffs' allegation that the Board does not reflect a fair cross section of the state. The Board is not a jury. An inmate has no right to challenge the participation of a member of the Board who is reviewing his suitability for parole. Plaintiffs allege that much information relied upon by the Board of Paroles is false and misleading. It is not a proper function of the federal judiciary to review the

credibility of reports and information received by a state parole board and used in making its determinations. Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir. 1971) cert. denied, 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); Brest v. Ciccone, 371 F.2d 981, 982 (8th Cir., 1967).

A final factor which must be given consideration is the burden that would be placed upon the North Carolina Board of Paroles by a holding that due process requirements are constitutionally demanded during parole suitability deliberations. *See,* Menechino v. Oswald, 430 F.2d 403, 409 (2nd Cir. 1970). The administrative burden of the parole system would be enormously increased if each inmate were given a plenary hearing on his suitability for parole. Further burdens would ensue with requirements of notice, procedures for the appointment of counsel and reporters, subpoenaing and cross-examination of witnesses, compensation of counsel and costs of transcripts, and the preparation of findings and conclusions by the Board. Such requirements would likely result in congested dockets before the Board of Paroles and result in undue delay in reviewing the individual cases of 10,000 prisoners in the system as each becomes eligible for parole consideration. The state is not constitutionally required to provide for the parole of prisoners, and if plaintiffs' demands were enforced, and the burden on the prison system became too great, the state might find it necessary or desirable to terminate the parole system.

This court has serious doubts about the propriety of federal judicial intervention into the matter of state parole procedures. In Menechino v. Oswald, *supra,* the court said:

> In the last analysis the Board's determination as to whether a prisoner is a good parole risk represents an aspect of state prison discipline, not an adjudication of rights in an adversary proceeding. Rose v. Haskins, 388 F. 2d 91 (6th Cir., 1968). If the federal judiciary, in the name of the Due

Process Clause, undertook the supervision of such disciplinary procedures, it would become inextricably involved, upon the suits that would inevitably follow, in non-legal, non-judicial determinations for which it is not equipped by training or experience. . . . We believe that to embark upon such a course would be unwise.

This court is of the opinion that plaintiffs do not have standing to challenge the disciplinary procedures of the North Carolina prison system. It has already been held that those claims were improperly raised by the class action, and the plaintiffs individually make no allegations whatsoever that they have ever been subjected in any way to prison disciplinary sanctions, or that they are about to be subjected to such sanctions.

The complaint is without merit. Now, therefore,

It is ordered that the complaint be and is hereby dismissed.

It is further ordered for purposes of the record only, that plaintiffs be allowed to file their complaint with the clerk of this court without prepayment of the fees, costs, or security therefor.